IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

LERA SCHULZE,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

Case No. 18-CV-00130-GKF-JFJ

**OPINION AND ORDER**

Before the court is the Motion to Exclude, in Whole or Part, the Testimony of Dr. Gary A. Rouse [Doc. 24] of defendant the United States of America. For the reasons set forth below, the motion is granted.

**I.    Background**

This is a wrongful death case brought by plaintiff Lera Schulze against the United States of America for the death of her husband, John G. Schulze. On June 8, 2017, John Schulze reported suicidal thoughts to a nurse practitioner and was escorted to the Oklahoma City Veterans Affairs Health Care System Medical Center ("VA Hospital") by law enforcement. The VA Hospital discharged John Schulze approximately two hours later. Two days later, on June 10, 2017, John Schulze died of a self-inflicted gunshot wound.[1]

In this lawsuit, plaintiff alleges defendant breached the standard of care by releasing John Schulze on June 8, 2017, rather than admitting him for an extended mental health evaluation. Plaintiff asserts a single claim for wrongful death pursuant to OKLA. STAT. tit. 12, § 1053.

---

[1] Plaintiff alleges John Schulze died on June 9, 2017, the day after his release from the VA Hospital. However, the State of Oklahoma Certificate of Death designates John Schulze's time and date of death as 7:18 on June 10, 2017. *See* [Doc. 22-29].

Plaintiff retained Dr. Gary A. Rouse, a licensed clinical psychologist, to opine as to whether defendant's evaluation and treatment of John Schulze on June 8, 2017, satisfied the applicable standard of care. Dr. Rouse provided a two-page report opining, in relevant part,

> The VA records show the Veteran was admitted at 13:05 and released at 15:03. In my 36 years in private practice, I have never had a patient that I have requested hospitalization/evaluation for suicidal ideation, and in particular transported by law enforcement, "treated and released" in the same day, much less within a two hour period. This Veteran killed himself the next day by shooting himself in the head. His wife found him the following morning.
>
> I strongly believe the VA failed in their treatment of this Veteran and should be held responsible for this failure, which resulted in the Veteran taking his own life due to his untreated severe psychological distress, which was reported directly to the VA by his provider prior to his admission.

[Doc. 24-3, p. 2]. Defendant now seeks to exclude Dr. Rouse's testimony, arguing Dr. Rouse's opinions fail to satisfy the *Daubert* standard's reliability requirement.

## II. *Daubert* Analysis[2]

Pursuant to Federal Rule of Evidence 702,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[2] Neither party requested a formal *Daubert* hearing and, based on the evidence in the court's record, the court concludes a formal hearing is not necessary. *See United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir. 1999) ("The trial judge is granted great latitude in deciding which factors to use in evaluating the reliability of expert testimony, and in deciding whether to hold a formal hearing.").

Rule 702 imposes on the trial court an important gate-keeping obligation, "to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 589 (1993)). Thus, "the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd*., 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592); *see also* FED. R. EVID. 702 advisory committee's notes to 2000 amendments ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.").

To determine whether an expert's opinion is admissible, the district court must generally undertake a two-step analysis: (1) first, to determine "whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion," and (2) second, to determine "whether the expert's opinion is reliable by assessing the underlying reasoning and methodology[.]" *Mathis v. Huff & Puff Trucking, Inc.,* 787 F.3d 1297, 1307 (10th Cir. 2015) (internal quotations omitted). "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Defendant does not challenge Dr. Rouse's qualifications. Accordingly, the court limits its inquiry to whether Dr. Rouse's opinion is reliable based on the underlying reasoning and methodology.

In *Daubert*, the Court articulated four factors that bear on the reliability of expert testimony:

> [1] Whether a "theory or technique . . . can be (and has been) tested"; [2] Whether it "has been subjected to peer review and publication"; [3] Whether, in respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation"; and [4] Whether the theory or technique enjoys "general acceptance" within a "relevant scientific community."

3

*Kumho Tire Co., Ltd.*, 526 U.S. at 149-50 (quoting *Daubert*, 509 U.S. at 592-94). However, the factors are "helpful, not definitive." *Id.* at 151. District courts have broad discretion to consider a variety of factors. *Id.* at 152.

In his deposition, Dr. Rouse testified that he based his opinions on his experience as a practicing clinical psychologist. [Doc. 24-2, pp. 41:8 to 42:10]. Plaintiff contends that Dr. Rouse's opinions are sufficiently reliable solely because Dr. Rouse has thirty-six years of experience as a practicing clinical psychologist and providing disability opinions for veterans constitutes ninety percent (90%) of his practice. [Doc. 32, p. 3].

"Where an expert testifies based on experience, the tribunal reviews the reliability of the testimony with reference to 'the nature of the issue, the expert's particular expertise, and the subject of [the] testimony.'" *F & H Coatings, LLC v. Acosta*, 900 F.3d 1214, 1222 (10th Cir. 2018) (quoting *Kumho Tire Co., Ltd.*, 526 U.S. at 150). That is, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." FED. R. EVID. 702 advisory committee's notes to 2000 amendments.

> [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

As previously stated, Dr. Rouse opines that defendant "failed in their treatment of [John Schulze]" because "[i]n [his] 36 years in private practice, [he] ha[d] never had a patient that [he] ha[d] requested hospitalization/evaluation for suicidal ideation, and in particular transported by law enforcement, 'treated and released' in the same day, much less within a two hour period."

4

[Doc. 24-3, p. 2]; *see also* [Doc. 24-2, p. 39:1-5 (Q: Can you tell me what it is in your opinion that the VA did that was – when Mr. Schulze came to the emergency room, what is it that the VA did that resulted in Mr. Schulze taking his own life? A: They released him.")]. When questioned regarding this opinion, Dr. Rouse stated that defendant should have kept John Schulze for at least thirty-six (36) hours and that the timeframe was "rather common knowledge." [Doc. 24-2, p. 39:8-22]. Dr. Rouse testified the 36-hour period gives potentially suicidal individuals "a cooling down period . . . to start thinking logically again." [Doc. 24-2, pp. 43:24 to 44:6]; *see also* [Doc. 24-2, pp. 39:23 to 40:7].

However, Dr. Rouse admitted that he was unaware of any emergency room standard for how long a patient should be kept in the emergency room who is not expressing suicidal intent or a plan and that he did not know if there was a majority view or a minority view of how long a patient should be kept [*Id.* p. 43:17-23]. Further, Dr. Rouse stated that his opinion was not based on any study or research and that he was unaware of any evidence supporting his opinions. [*Id.* pp. 43:24 to 44:17]. Finally, Dr. Rouse testified that assessment of suicide risk is not an "exact science" and that risk factors vary among individuals. [*Id.* 44:18-23].

Although "[e]xperience may provide the basis for qualification as an expert, . . . experience is not a methodology." *Dean v. Thermwood Corp.*, No. 10-CV-433-CVE-PJC, 2012 WL 90442, *7 (N.D. Okla. Jan. 11, 2012); *see also Troudt v. Oracle Corp.*, — F. Supp. 3d —, 2019 WL 1398053, *2 (D. Colo. Jan. 31, 2019) (quoting *Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 664 (10th Cir. 2013) ("Yet 'while experience may qualify an expert . . . credentials alone do not suffice' to establish that the expert's opinion has a reliable basis in fact.") Dr. Rouse may be qualified to opine regarding the appropriate standard of care and whether a breach occurred by virtue of his experience. However, Dr. Rouse fails to explain how his experience led to his conclusions.

5

Although Dr. Rouse contends that a 36-hour hospital admission "cooling off" period is "common knowledge," plaintiff provides no information to establish a similarity between Dr. Rouse's prior experiences and John Schulze's treatment. In fact, as previously stated, Dr. Rouse admits that suicide risk is not an "exact science" and that risk factors vary among individuals. Thus, the court is without the means to test Dr. Rouse's assumptions or evaluate the basis of Dr. Rouse's opinion. Further, Dr. Rouse testified that his opinion was not based on study or research and he was unaware of any standards supporting his opinions. Plaintiff offers no additional evidence to the contrary. Thus, the opinions are based only on the *ipse dixit* of Dr. Rouse and are therefore inadmissible under the *Daubert* standard.[3] *See Graves v. Mazda Motor Corp.*, 405 F. App'x 296, 300 (10th Cir. 2010) ("[Our] precedent is clear and unequivocal that the *ipse dixit* of an expert, no matter how qualified he may be, is never enough to guarantee him a ticket to admissibility.").

**III.    Conclusion**

WHEREFORE, defendant the United States of America's Motion to Exclude, in Whole or Part, the Testimony of Dr. Gary A. Rouse [Doc. 24] is granted.

IT IS SO ORDERED this 1st day of April, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff also argues that Dr. Rouse should nevertheless be permitted to testify because the government will have the opportunity to cross-examine him. It is correct that the *Daubert* court recognized that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky *but admissible* evidence." *Daubert*, 509 U.S. at 596 (emphasis added). Here, plaintiff failed to satisfy her burden to prove that Dr. Rouse's opinions are admissible, albeit shaky. Cross-examination cannot cure an expert's failure to apply a reliable methodology and does not satisfy this court's gatekeeping function.